1   William E. Shapiro (SBN 222615)
    LAW OFFICES OF WILLIAM E. SHAPIRO
2   244 California Street, Suite 300
    San Francisco, CA 94111
3   Telephone: (415) 678-9209
    Facsimile: (415) 358-8515

4   Mary Catherine Wiederhold (SBN 219429)
    LAW OFFICES OF MARY CATHERINE WIEDERHOLD
5   1458 Sutter Street
    San Francisco, CA 94109
6   Telephone: (415) 533-0735
    Facsimile: (415) 749-1487

7

8   Attorney for Plaintiff RICHARD A. FRUSTERE

9                       UNITED STATES DISTRICT COURT

10                      NORTHERN DISTRICT OF CALIFORNIA

11                                          )  Case No.: 11-CV-06395-MMC
    RICHARD A. FRUSTERE,                    )
12                                          )  **STIPULATION AND [PROPOSED]**
              Plaintiff,                    )  **ORDER TO ALLOW FILING OF FIRST**
13                                          )  **AMENDED COMPLAINT**
         vs.                                )
14  WELLS FARGO BANK, N.A., BRENDAN         )
    MURPHY, individually and as trustee of the )
15  MURPHY FAMILY TRUST, and DOES 1 to      )
    100                                     )
16                                          )
              Defendant                     )  **Complaint Filed: June 2, 2011**
17  _____)

18

19        Plaintiff Richard A. Frustere ("Plaintiff") and defendant Wells Fargo Bank, N. A. ("Wells

20  Fargo"), by and through their counsel of record, stipulated agree as follows:

21        Whereas, Wells Fargo has filed a motion to dismiss pursuant to Federal Rule of Civil

22  Procedure 12(b)(6);

23        Whereas, on Monday February 6, 2012, counsel for Plaintiff requested that counsel for

24  Wells Fargo agree to allow Plaintiff to file a First Amended Complaint;

25

1    Whereas counsel for Wells Fargo agreed to file such a stipulation, provided Plaintiff file

2  any proposed first amended complaint in a timely manner so as not to delay disposition of this

3  case on its merits;

4    Whereas, the parties wish to avoid the time and expense of a hearing subsequent briefings

5  pursuant to Plaintiff's request for leave to file a first amended complaint;

6    Therefore, the parties stipulate, agree, and respectfully request, that the Court issue an

7  order allowing the plaintiff to file First Amended Complaint For Damages and Injunctive Relief

8  and Jury Trial Demanded, attached as Exhibit A to this stipulation.

9    Pursuant to this stipulation, Plaintiff agrees to file his first amended complaint, attached

10  hereto as Exhibit A, no later than three court days from the signing of the order approving this

11  stipulation.

12    The stipulation may be signed in counterparts. For the purposes of this stipulation, a

13  facsimile signature copy shall be deemed as valid as if the original.

14

Dated this February ____, 2012

15

16                                    William E. Shapiro
                                      Mary Catherine Wiederhold
                                      ATTORNEY FOR PLAINTIFF
17                                    Richard A. Frustere

18

Dated this February __7__, 2012

19
                                      _____
20                                    Jason M. Richardson
                                      ATTORNEY FOR DEFENDANT
21                                    Wells Fargo Bank, NA

    Good cause appearing, the Court hereby orders that plaintiff be allowed to file the

22  attached First Amended Complaint.    Plaintiff shall file his first amended complaint no later

23  than three court days from the filing of this order.
    IT IS SO ORDERED.

24  Dated: February 14, 2012
                                      _____
25                                    Hon. Maxine M. Chesney

55000/0034/2121133.1;Stipulation

STIPULATION- 2

1    Whereas counsel for Wells Fargo agreed to file such a stipulation, provided Plaintiff file

2    any proposed first amended complaint in a timely manner so as not to delay disposition of this

3    case on its merits;

4        Whereas, the parties wish to avoid the time and expense of a hearing subsequent briefings

5    pursuant to Plaintiff's request for leave to file a first amended complaint;

6        Therefore, the parties stipulate, agree, and respectfully request, that the Court issue an

7    order allowing the plaintiff to file First Amended Complaint For Damages and Injunctive Relief

8    and Jury Trial Demanded, attached as Exhibit A to this stipulation.

9        Pursuant to this stipulation, Plaintiff agrees to file his first amended complaint, attached

10   hereto as Exhibit A, no later than three court days from the signing of the order approving this

11   stipulation.

12       The stipulation may be signed in counterparts. For the purposes of this stipulation, a

13   facsimile signature copy shall be deemed as valid as if the original.

14   Dated this February ___, 2012

15

16                                                    William E. Shapiro
                                                      Mary Catherine Wiederhold
                                                      ATTORNEY FOR PLAINTIFF
17                                                    Richard A. Frustere

18   Dated this February ____, 2012

19

20                                                    Jason M. Richardson
                                                      ATTORNEY FOR DEFENDANT
21                                                    Wells Fargo Bank, NA

22       Good cause appearing, the Court hereby orders that plaintiff be allowed to file the

23   attached First Amended Complaint.

24       IT IS SO ORDERED.

25   Dated:

                                                      Hon. Maxine M. Chesney

55000/0034/2121133.1;Stipulation

STIPULATION- 2

# EXHIBIT A

William E. Shapiro (SBN 222615)
LAW OFFICES OF WILLIAM E. SHAPIRO
244 California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 678-9209
Facsimile: (415) 358-8515

Mary Catherine Wiederhold (SBN 219429)
LAW OFFICES OF MARY CATHERINE WIEDERHOLD
1458 Sutter Street
San Francisco, CA 94109
Telephone: (415) 533-0735
Facsimile: (415) 749-1487

Attorney for Plaintiff RICHARD A. FRUSTERE

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| RICHARD A. FRUSTERE,<br><br>      Plaintiff,<br><br>  vs.<br><br>WELLS FARGO BANK, N.A., BRENDAN<br>MURPHY, individually and as trustee of the<br>MURPHY FAMILY TRUST, and DOES 1 to<br>100<br><br>      Defendants | Case No.: 3:11-cv-06395-MMC<br><br>FIRST AMENDED COMPLAINT FOR<br>DAMAGES AND INJUNCTIVE RELIEF<br><br>JURY TRIAL DEMANDED |

1.      Richard A. Frustere (hereafter "plaintiff") is a natural person living in Westerly,
Rhode Island.

2.      Wells Fargo Bank, N.A. (hereafter "Wells Fargo"), is a corporation organized
under the laws of the state of Delaware which is authorized to do business in the State of
California. Its principal place of business and headquarters is San Francisco County, California.

COMPLAINT - 1

1     3.     Brendan Murphy is a natural person and resident of San Mateo County, and

2  trustee of the Murphy Family Trust.

3     4.     Plaintiff does not know the true names and capacities of defendants sued herein as

4  Does 1 through 100, inclusive, and therefore sues these defendants by such fictitious names

5  under the provisions of California Code of Civil Procedure section 474.  Plaintiff will seek leave

6  to amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is

7  informed and believes and thereon alleges that each of the fictitiously named defendants is

8  responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as

9  herein alleged were and continue to be proximately caused by such occurrences. Plaintiff is

10  informed and believes and thereon alleges that, at all times herein mentioned each of the

11  defendants sued herein was an employee of the remaining defendants. Plaintiff alleges that each

12  and every defendant alleged herein ratified the conduct of each and every other defendant.

13  Plaintiff further alleges at all times defendants were acting within the purpose and scope of such

14  agency and employment.

15     5.     Plaintiff owns the real property known as 795 Park Avenue, Moss Beach,

16  California (hereafter "subject property"). Legal description of the real property is:

17       LOT 10 AND 11 IN BLOCK 1 AS SHOWN ON THAT CERTAIN MAP

18       ENTITLED "MA4" OF RIVERA OCEAN VILLA TRACT, SAN MATEO

19       COUNTY, CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY

20       RECORDER OF SAN MATEO COUNTY, STATE OF CALIFORNIA ON

21       JUNE 15, 1908 IN BOOK 6 OF MAPS AT PAGE 20.

22       APN NO. 0037-250-180

23     6.     Plaintiff purchased the subject property on or about November 8, 1985, by virtue

24  of a note and deed of trust securing loans.

25

1       7.     Plaintiff refinanced the subject property on or about October 13, 1993, through a

2  deed of trust and note securing the loan through Wells Fargo Bank.

3       8.     Plaintiff is informed and believes and thereon alleges that at some point

4  subsequent to the 1993, the deed of trust was transferred by Wells Fargo Bank to another entity.

5  At that time, plaintiff is informed and believes and thereon alleges that Wells Fargo became a

6  loan servicer.

7       9.     Plaintiff established an online bill pay system through Bank of America, where he

8  maintained an account, in order to pay the monthly payment on the deed of trust to Wells Fargo

9  bank. These payments began in approximately 2001 and continued to the present. Unknown to

10  plaintiff, beginning in August 2007, Wells Fargo ceased receiving the monthly transfers to pay

11  off the note held by Wells Fargo.

12      10.    On or about June 18, 2006, plaintiff traveled to Rhode Island to attend to his sick

13  mother. During the time he cared for his mother prior to her death, plaintiff notified Wells Fargo

14  in writing that he was not going to be at the subject property for an extended period.  Plaintiff

15  directed Wells Fargo to send any notices to him at his Rhode Island address.

16      11.    On or about November 12, 2007, Wells Fargo sent a notice of default to plaintiff

17  at the subject property and not at the new Rhode Island address which plaintiff had given Wells

18  Fargo in 2006. On or about November 22, 2007, plaintiff learned that the subject property was in

19  default and that his payments had not been received by Wells Fargo. He began contacting Wells

20  Fargo telephonically and in writing. After attempting to learn what had happened to his online

21  payments, plaintiff sent a facsimile to Wells Fargo Bank on December 24, 2007, informing them

22  of a number of issues related to the subject property.  In his facsimile, plaintiff informed Wells

23  Fargo about his situation of caring for his ill mother who lived in Rhode Island and that all future

24  communications should be sent to his Rhode Island address..

25

12.    Despite being informed of plaintiff's temporary Rhode Island address, Wells Fargo continued to send all notices and communications to the subject property and did not send them to plaintiff.

13.    Plaintiff requested, on more than one occasion, that Wells Fargo representatives tell him how to bring his account up to date, either by paying in one lump sum or via a payment plan.

14.    On or about December 20, 2008, plaintiff spoke with a representative of Wells Fargo at telephone number 1-800-551-9808.  Plaintiff asked the Wells Fargo representative if he could make a full payment of the outstanding default amount.  Plaintiff was told that he could not pay through that department and through the representative he was speaking with.

15.    On or about January 7, 2009, plaintiff spoke again with a representative of Wells Fargo's collections department who identified himself as Raymond. He was informed that there was a sale date on his property of January 12, 2009.

16.    After January 7, Plaintiff again spoke with representatives of Wells Fargo to negotiate terms and thereby prevent the foreclosure of his home. At some point during the negotiations, Wells Fargo took the foreclosure sale date of the subject property off calendar. On January 14, 2009, plaintiff was informed by a Wells Fargo representative who identified herself as Gabriella at 1-800-416-1472 that there was no foreclosure date scheduled of the subject property.

17.    On or about January 23, 2009, Wells Fargo accepted plaintiff's payment in the amount of $2,780.

18.    On or about January 29, 2009, Wells Fargo finally consented to a payment plan with plaintiff. The first payment was wired by plaintiff to Wells Fargo or about January 29, 2009, in the amount of $3,000 with the following payments being due on March 1, 2009. The payment plan was expected to last through June 2009. Plaintiff made all payments required

1    under the plan. Receipt of plaintiff's first payment by Wells Fargo was confirmed by a Wells

2    Fargo representative, identified as Temeka at number 1-800-745-2426, on or about January 29,

3    2009.

4         19.     Despite being on a mutually agreed payment plan with defendants, plaintiff is

5    informed and believes and thereon alleges that Wells Fargo continued to set dates for a trustee

6    sale of the subject property.

7         20.     Plaintiff was instructed on January 29, 2009 by a Wells Fargo representative to

8    request a second payment plan prior to June 2009 in order to deal with a balloon payment on the

9    mortgage.  Wells Fargo representatives then presented plaintiff with a second payment plan

10    which was double the amount of the previous payment plan, despite defendant being made fully

11    aware of plaintiff's financial situation.

12         21.     While trying to negotiate a second payment plan with Well Fargo representatives,

13    plaintiff continued to make payments to Wells Fargo. Wells Fargo cashed plaintiff's checks and

14    continued to negotiate with plaintiff regarding the payment plan. Some of the tendered and

15    accepted money was later returned to plaintiff by Wells Fargo.

16         22.     Eventually, on or about October 2, 2009, a Wells Fargo representative, who

17    identified herself as Vicky Davenport at telephone number 1-800-853-8516 x 40494, informed

18    plaintiff during a telephone conversation that the subject property was scheduled for a trustee

19    sale on November 9, 2009. In subsequent telephone conferences, plaintiff, Vicky Davenport, and

20    a representative of Wells Fargo's loss mitigation depart, who was identified as Fatriya, discussed

21    options to prevent the foreclosure sale of the subject property from going forward. During the

22    telephone conference call on October 2, 2009, Wells Fargo's representatives informed plaintiff

23    that if he made payments totaling $4,049.70, the trustee sale of the subject property would be not

24    be held and rescheduled for a time after December 1, 2009. This way, plaintiff was told, it would

25

1   allow for either a loan modification or payment plan to be approved by Wells Fargo, allowing

2   plaintiff to keep the subject property.

3        23.    Plaintiff tendered the requested payment of $4,049.70 on November 9, 2009.

4   Plaintiff's tendered payment was accepted by Wells Fargo on that date.

5        24.    Plaintiff is informed and believes and thereon alleges that a new trustee sale was

6   scheduled by Wells Fargo. Despite the assurances of Wells Fargo representatives that a new

7   trustee sale would be scheduled for some time in the future, no earlier than December, the sale of

8   the subject property did, in fact, occur on November 23, 2009. Plaintiff did not discover that the

9   sale occurred until December 8, 2009.

10

11                          **FIRST CAUSED OF ACTION**
                                  **FRAUD**

12                      **(As Against Wells Fargo)**

13        25.    Plaintiff alleges and incorporates herein by reference all of the allegations

14   contained in each of the proceeding paragraphs as though fully set forth herein, with the

15   exception of any particular allegation that is expressly inconsistent with any allegation made in

16   this cause of action.

17        26.    Plaintiff alleges that based upon the foregoing representations of defendant, and

18   each of them, plaintiff did in fact place his trust in the representations of defendant, and that such

19   trust was reasonable.

20        27.    Plaintiff alleges that defendant presented plaintiff an option whereby either he

21   would obtain a loan modification or a payment plan which would allow him to bring his

22   mortgage up to date and reinstated fully. According to Wells Fargo representatives, these options

23   were contingent upon plaintiff making a payment of $4,049.70 by November 9, 2009. According

24   to Wells Fargo representatives, this payment would secure a delay of time on the trustee sale

25

1   which will allow either option to be completed.  Plaintiff timely made the November 9, 2009

2   payment.

3       28.     Plaintiff alleges that defendant had a duty to disclose the deadlines involved in the

4   foreclosure process. Plaintiff alleges that defendant did not provide him with accurate

5   information, even in response to his continued inquiries during the negotiations for either a loan

6   modification or payment plan.

7       29.     Plaintiff also alleges that defendant had a duty to disclose the date of the

8   foreclosure sale and when it happened.

9       30.     Plaintiff was induced by the foregoing representations to and did make payments

10  to defendant based on its representations to him about bringing his mortgage up to date.

11      31.     At the time defendant's statements were made to plaintiff, defendant knew that

12  the statements were untrue and that the representations were material representations.

13      32.     Plaintiff was induced and did rely on defendant's representations through

14  deception.  Plaintiff's reliance was justified as he believed defendant was working with him and

15  in his best interest. Defendant verbally promised to either modify or accept plaintiff's payment

16  plan, both of which were in place prior to the sale of the subject property and after plaintiff fully

17  complied with defendant's requests.

18      33.     Plaintiff alleges that defendant knew at the time the representations were made to

19  plaintiff that they were untrue, and defendant knew at the time they were made in order to induce

20  plaintiff to rely upon the representations which were material to the negotiations between the two

21  parties.

22      34.     Plaintiff alleges defendant fraudulently intended to convert his right, title and

23  interest to the subject property and any equity therein.

24

25

35.     Plaintiff alleges that due to his reliance on defendant's representations, he has been damaged and will contain suffer additional costs of moving out of the subject property and the cost to relocate his permanent residence.

36.     As a direct and proximate result of the above conduct, plaintiff has suffered and continues to suffer physical, mental, and emotional pain, injury and distress, in an amount in excess of this Court's jurisdictional minimum, including, but not limited to humiliation, discomfort and annoyance all to his general damages and in an amount to be proven.

37.     Plaintiff alleges that defendant had superior bargaining strength over him, and he was offered only the opportunity to accept or reject the terms presented.  Furthermore, defendant dictated all terms related to any loan modification or payment plan and that no negotiations were possible between plaintiff and defendant.  Furthermore, defendant's contract was a contract of adhesion.

38.     Plantiff is informed and believes and thereon alleges that defendant, and each of them entered into a fraudulent scheme, the purpose of which is to make offers to him of either a loan modification or payment plan. Defendant falsely represented to plaintiff that he would qualify for either a loan modification or payment plan.  In fact, plaintiff was not eligible for any other type of financing or modification.  Defendant's scheme was devised to extract illegal and undisclosed compensation from plaintiff.

39.     Plaintiff further alleges that the foreclosure sale of the subject property was not executed in accordance with California Civil Code sections 1624, 2923.5, 2932.5, and Commercial Code section 3302 et seq.

40.     The actions of defendant, and each of them were fraudulent, oppressive, and malicious so as to warrant the imposition of exemplary damages, and that by virtue of defendant's conduct as set forth herein plaintiff is entitled to exemplary damages.

## SECOND CAUSE OF ACTION
## INTENTIONAL MISREPRESENTATION
### (As against Wells Fargo)

41.     Plaintiff alleges and incorporates herein by reference all of the allegations contained in each of the proceeding paragraphs as though fully set forth herein, with the exception of any particular allegation that is expressly inconsistent with any allegation made in this cause of action.

42.     Plaintiff is informed and believes thereon alleges that defendant's Notices of Default were false in the following particulars, including, but not limited to, intentionally giving him the wrong date for the foreclosure sale, demanding payments from him, and stating that such payments would reinstate his loan, when defendant demonstrated no intention of reinstating the loan.

43.     Plaintiff alleges that based upon the foregoing representations of defendant, plaintiff did in fact place his trust in the reputation of defendant and that such trust was reasonable.

44.     Plaintiff alleges defendant had a duty to disclose accurate deadlines involved in the foreclosure process. Plaintiff alleges defendant did not provide him with accurate information, including misrepresenting the date upon which the foreclosure sale would go forward as well as the effect of the payments requested by defendant.

45.     Plaintiff alleges that at the time that the statements were made, defendant was aware that the statements were untrue and that these representations were material representations.

46.     Plaintiff alleges that defendant wrongfully, without justification, and without privilege, conducted an invalid foreclosure sale against the subject property, thereby slandering plaintiff's title thereto.

47.     Furthermore, the aforementioned acts of defendant, and each of them was motivated by oppression, fraud, malice in that defendant, and each of them, by their respective acts, omissions, nonfeasance, misfeasance or malfeasance executed an invalid foreclosure sale on the subject property.  Defendant took this action in order to deny plaintiff's right of possession and ownership, whereupon the foreclosure sale was defective as such and the subject property must be restored to plaintiff or plaintiff is entitled to value thereof.

### THIRD CAUSE OF ACTION
### VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200 et seq.
### (As against Wells Fargo)

48.     Plaintiff alleges and incorporates herein by reference all of the allegations contained in each of the proceeding paragraphs as though fully set forth herein, with the exception of any particular allegation that is expressly inconsistent with any allegation made in this cause of action.

49.     The acts and practices, as described in the previous paragraphs, violate California Business and Professions Code section 17200 et seq. because they violated the statutes listed above and constitute unlawful business practices within the meaning of Business and Professions Code section 17200 et seq.

50.     The acts and practices, as described in previous paragraphs, violated Business and Professions Code section 17200 et seq. because the acts of defendant constitute unfair business practices within the meaning of Business and Professions Code section 17200 et seq.

51.     As a result of the aforementioned acts and practices of defendants, plaintiff has lost money or property and has, in fact, suffered injury. Defendant has received, continues to retain, plaintiff's property.

1     52.    As a further direct and approximate result of the aforementioned acts, defendant

2   received and continue to hold ill-gotten gains belonging to plaintiff, in that defendant has

3   profited in that amount from its unlawful activities.

4     53.    Further, the foregoing conduct constitutes a violation of a consumer law,

5   including, or violates the policy or spirit of such law or otherwise significantly threatened or

6   harmed competition. Defendant's practices described above are likely to mislead the general

7   public, and therefore, constitute fraudulent business acts or practices within the meaning of

8   Business and Professions Code section 17200 et seq. Defendant's unfair, unlawful, and

9   fraudulent business practices and false and misleading advertising present a continuing threat to

10   members of the public, and other consumers will be defrauded. Plaintiff and other members of

11   the general public have no other adequate remedy at law.

12     54.    Business and Professions Code section 17203 provides that the Court may restore

13   to any person in interest any money or property which may have been acquired by means of such

14   unfair competition or unlawful business practice, and order disgorgement of all profits gained by

15   defendants by operation of the unlawful practices alleged herein. Plaintiff is entitled to restitution

16   pursuant to Business and Professions Code sections 17203 and 17208 for all funds paid to

17   defendant.  Likewise, defendant should be required to disgorge the ill-gotten gains that they have

18   taken from plaintiff as a result of their false statements, misrepresentations, and unlawful or

19   unfair acts.

20

21                        **FOURTH CAUSE OF ACTION**
                          **BREACH OF CONTRACT**
22                        **(As Against Wells Fargo)**

23     55.    Plaintiff alleges and incorporates herein by reference all of the allegations

     contained in each of the proceeding paragraphs as though fully set forth herein, with the
24
     exception of any particular allegation that is expressly inconsistent with any allegation made in
25

COMPLAINT - 11

1 | this cause of action.

2 |     56.    Plaintiff and defendant entered into a series of agreements, both written and

3 | verbal, including a note and deed in trust, whereby the subject property was refinanced and

4 | plaintiff would make monthly mortgage payments. Plaintiff and defendant then further agreed

5 | that the mortgage payments would be made to defendant by direct deposit withdrawals from

6 | plaintiff's bank account.

7 |     57.    At the time payments were due, plaintiff had sufficient funds to be transferred and

8 | accepted by direct deposit transfer to defendant.

9 |     58.    Plaintiff performed all conditions, covenants, and promises required on his part to

10 | be performed in accordance with the terms and conditions of the agreement.

11 |     59.    Defendant's actions, by failing to perform after accepting the money from the

12 | plaintiff after the agreement between the parties, constituted a breach of the agreement between

13 | the parties.

### FIFTH CAUSE OF ACTION
### WRONGFUL EVICTION
### (As Against Murphy Family Trust)

14 |
15 |
16 |     60.    Plaintiff alleges and incorporates heard by reference the allegations contained in

17 | the preceding paragraphs as though fully set forth herein, with the exception of any particular

18 | allegation that is expressly inconsistent with any allegation made in this cause of action.

19 |     61.    Plaintiff is informed and believes, and thereupon alleges, that on or about

20 | November 23, 2009, defendant Wells Fargo conducted an invalid trustee sale at which time the

21 | subject property was purchased by Brendan Murphy, in his capacity as trustee for the Murphy

22 | Family Trust.

23 |     62.    Because of the ongoing dispute with defendant Wells Fargo, plaintiff had

24 | previously posted signs at the subject property. These signs stated the subject property was the

25 |

1   residence of plaintiff and that plaintiff could be contacted by various means including a Rhode

2   Island telephone number and a mailing address.

3        63.     Plaintiff is informed and believes and thereupon alleges that at some point after

4   December 8, 2009, the signs were taken down by agents acting on behalf of the Murphy Family

5   Trust. On or around December 8, 2009, the locks at the subject property were also changed by

6   agents acting on behalf of the Murphy Family Trust.

7        64.     After obtaining title through the defective trustee sale, agents of the Murphy

8   Family Trust did not cause any notice to quit to be served on plaintiff nor were any unlawful

9   detainer proceedings instituted prior to his lock out at the subject property.

10       65.     As a direct and proximate result thereof, plaintiff has suffered, and continues to

11  suffer, pain, discomfort, inconvenience, anxiety, economic loss, loss of use, and mental anguish,

12  all to his detriment in amount to be determined at trial.

13       66.     Defendant acted in knowing violation or reckless disregard of plaintiff's rights

14  under California Code of Civil Procedure, and plaintiff thereby entitled to damages according to

15  proof. Furthermore, defendant's actions were both oppressive and malicious within the meaning

16  of Civil Code section 3294, and subjected plaintiff to cruel and unjust hardship in willful

17  conscious disregard of his rights and safety, thereby entitled plaintiff to an award of punitive

18  damages to be proven at trial.

19

20                              **SIXTH CAUSE OF ACTION**
                                      **TRESPASS**
21                            **(As Against Murphy Family Trust)**

22       67.     Plaintiff realleges incorporates heard by reference the allegations contained in  the

23  preceding paragraphs as though fully set forth herein, with the exception of any particular

24  allegation that is expressly inconsistent with any allegation made in this cause of action.

25       68.     On or about December 1, 2009, plaintiff was in possession of the subject property.

69.     On December 1, 2009, the subject property was plaintiff's home and primary residence, which it had been since 1985.

70.     On or about December 1, 2009, without the consent or authority and against the will of plaintiff, defendant entered onto the subject property.

71.     The effect of defendant's conduct, as alleged in this complaint, has inflicted irreparable harm, including the loss of plaintiff's personal property located at the subject property.

72.     As a result of defendant's conduct, as alleged in this complaint, plaintiff has been deprived of the use of the subject property since approximately December 1, 2009 until the present.

73.     Defendant failed to conform with applicable statutory schemes for conducting a proper, valid foreclosure, as alleged in this complaint. Furthermore, defendant's actions were done negligently and with disregard of the duties owed of defendant to plaintiff.

74.     As an approximate result of defendant's conduct, as alleged in this complaint, plaintiff suffered mental anguish and emotional distress, all to his general damages. Defendant's conduct was malicious and oppressive, and was conducted by defendant in willful conscious disregard of plaintiff's rights and subjected plaintiff to cruel and unjust hardship. Plaintiff is therefore entitled to recover punitive damages.

### SEVENTH CAUSE OF ACTION
### CONVERSION
### (As against Murphy Family Trust)

75.     Plaintiff realleges incorporates heard by reference the allegations contained in the preceding paragraphs as though fully set forth herein, with the exception of any particular allegation that is expressly inconsistent with any allegation made in this cause of action.

76. At all times herein mentioned, and in particular on or about December 1, 2009, plaintiff was and still is entitled to the possession of the following personal property, specifically stock certificates for his Pacific Gas & Electric Company (hereinafter "PG&E") shares.

77. On or about December 1, 2009, and at Moss Beach, California, the above mentioned personal property had a value to be proven at trial.

78. On or about December 1, 2009, defendant took the above mentioned personal property from plaintiff's possession and converted the same to their own use.

79. Per California Civil Code section 3336, as a proximate result of defendant's conversion, plaintiff suffered the following damages which are the natural, reasonable, and proximate result of the conversion in an amount to be determined at trial, all to his damage.

80. Between the time of defendant's conversion of the above-mentioned personal property, defendant's own use and the filing of this action, plaintiff expended time and money in pursuit of the converted property, all to plaintiff's further dmages in an amount to be determined at trial.

81. The aforementioned acts of defendant were willful, wanton, malicious, and oppressive, and were undertaken with the intent to defraud or oppress plaintiff and justify the award of exemplary and punitive damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**NEGLIGENCE**
**(As against Wells Fargo and Murphy Family Trust)**

82. Plaintiff alleges and incorporates herein by reference all of the allegations contained in each of the proceeding paragraphs as though fully set forth herein, with the exception of any particular allegation that is expressly inconsistent with any allegation made in this cause of action.

**A. Negligent Foreclosure As to Wells Fargo**

83. Defendant, as a fiduciary agent of plaintiff, owed plaintiff a duty to conduct a legal, proper foreclosure sale.

84. Furthermore, defendant owed, at a minimum, the ordinary duty of care to plaintiff to conduct a legal, proper foreclosure sale.

85. Plaintiff is informed and believes in thereon alleges that defendant and each of them, by virtue of their education, training, and experience in the foreclosure process, knew or should have known of the procedural requirements as alleged above.

86. Defendant Wells Fargo and their agents, under California Civil Code section 1714, owed plaintiff the duty to exercise reasonable care in the administration of the deed of trust and note.

87. Notwithstanding this knowledge, defendant negligently conducted the foreclosure sale, and negligently culminating in wrongful foreclosure to plaintiff's damage.

88. As a result of the wrongful foreclosure by defendant, plaintiff has suffered damages in an amount according to proof at trial.

89. Defendant's breach was a substantial factor in causing and was the direct and proximate causes of damages to plaintiff. Said damages include but are not limited to: physical injuries such as severe emotional distress, total loss of the subject property, moving expenses, increased costs for rent and other damages. Some of these damages are continuing and permanent in nature, the value of which will be presented at trial.

**B. Negligent Eviction As to Murphy Family Trust**

90. Defendant Murphy Family Trust, and their agents under California Civil Code section 1714, owed plaintiff the duty to exercise reasonable care in the ownership, management, maintenance, and control of the premises.

91. The duty to exercise reasonable care owed by defendant Murphy Family Trust to plaintiff also included, but was not limited to the following duties: the duty to refrain from

1  interfering with plaintiff's full use and quiet enjoyment of the subject property, and the duty to

2  refrain from terminating plaintiff's occupancy or possession except in good faith compliance

3  with applicable law.

4       92.    Defendant's breach of duty was a substantial factor in causing and were the direct

5  and proximate causes of damages to plaintiff.  These damages include but are not limited to:

6  physical injuries such as severe emotional distress, moving expenses, increased costs for rent and

7  other damages.  Some of these damages are continuing and permanent in nature, the value of

8  which will be presented at trial.

9       93.    The aforementioned duties breached by defendant were done with knowing or

10  reckless disregard for plaintiff's rights, safety and health.

## NINTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (As against Wells Fargo and Murphy Family Trust)

94.    Plaintiff alleges and incorporate herein by reference all of the allegations

contained in each of the proceeding paragraphs as though fully set forth herein, with the

exception of any particular allegation that is expressly inconsistent with any allegation made in

this cause of action.

95.    Defendants' failure to conform with applicable statutory schemes for conducting a

proper valid foreclosure, as alleged in this complaint, were knowing, intentional, willful, and

done with a reckless disregard of the probability of causing plaintiff severe emotional distress.

96.    As a proximate result of defendants' conduct, as alleged in this complaint,

plaintiff suffered mental anguish and emotional distress, all to his general damages.

97.    Defendants' conduct was malicious and oppressive in that it was carried on by

defendants in willful conscious disregard of plaintiff's rights and subjected plaintiff to cruel and

unjust hardship. Plaintiff is therefore entitled to recover punitive and exemplary damages.

**TENTH CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(As against all Defendants)**

98.     Plaintiff alleges and incorporates herein by reference all of the allegations contained in each of the proceeding paragraphs as though fully set forth herein, with the exception of any particular allegation that is expressly inconsistent with any allegation made in this cause of action.

99.     Defendants failed to conform with applicable statutory schemes for conducting a proper valid foreclosure, as alleged in this complaint.  Furthermore, defendants actions were done negligently and with the disregard of the duties owed of them, as alleged above, to plaintiff as well as done with the probability of causing plaintiff emotional distress.

100.    As a proximate result of defendants' conduct, as alleged in this complaint, plaintiff suffered mental anguish and emotional distress, all to his general damage.

101.    Defendants' conduct was malicious and oppressive, and that was carried on by defendants with the willful conscious disregard of plaintiff's rights and subjected plaintiff to cruel and unjust hardship. Plaintiff is therefore entitled to recover punitive damages.

//

//

//

//

1   WHEREFORE, plaintiff prays for judgment as follows:

2       1.    For general damages according to proof at time of trial;

3       2.    For special damages according to proof at time of trial;

4       3.    For injunctive relief as provided for by law;

5       4.    For declaratory relief as provided for by law;

6       5.    For exemplary damages subject to proof at time of trial;

7       6.    For reasonable attorneys' fees provide for by contract or statute;

8       7.    For other and further relief as the court may deem just and proper.

9

10

11  Dated this February 6, 2012

                           William E. Shapiro
12                             Mary Catherine Wiederhold
                           ATTORNEYS FOR PLAINTIFF
13                             Richard A. Frustere

14

15

16  Plaintiff hereby demands a trial by jury.

17

18  Dated this February 6, 2012

                           William E. Shapiro
19                             Mary Catherine Wiederhold
                           ATTORNEYS FOR PLAINTIFF
20                             Richard A. Frustere

21

22

23

24

25